[Civil No. 4648.   Filed March 13, 1944.]

[146 Pac. (2d) 902.]

CAPITAL CONSTRUCTION COMPANY, a Corporation, and ERNEST W. EVERLY, an Individual Trading as ERNEST W. EVERLY Acting as Joint Contractors and Co-Aventurers and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA; RAY GILBERT, EARL G. ROOKS and FRED E. EDWARDS, as Members of and Constituting The Industrial Commission of Arizona; and ROBERT W. EVANS, Respondents.

Messrs. Jennings & Salmon and Mr. Ozell M. Trask, for Petitioners.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Respondents.

ROSS, J.—Robert W. Evans, claiming compensation for an injury he sustained while doing some work for the Capital Construction Company and Ernest W. Everly, on April 17, 1943, presented his claim to the Industrial Commission, and after taking evidence for and against such claim, the Commission made an award to him of $1,022.01 for temporary total disability and a monthly life award of $39.33 from and after October 10, 1942, together with medical, surgical, hospital and nursing benefits and an artificial arm. The Construction Company and Everly being dissatisfied with the award have caused the record to be certified to this court for review. The contentions of the parties will appear as we proceed.

We state the essential facts as follows: The Capital Construction Company and Ernest W. Everly took a contract from the United States Government to construct airport Landing Field No. 4, near Casa

Grande, Arizona. The petitioner, Employers' Liability Assurance Corporation, Limited, was the insurer. The contractors employed the firm of Sanders & Evans, a co-partnership, to do certain of the work called for by their contract. The runways of the landing field according to plan called for a sealed coat of light sand or gravel mixed with hot oil or asphalt material. The sand or gravel was brought from a source nearby and piled on the edge of the field in a stock pile, and when needed was loaded on trucks with a steam shovel and driven to where the hot oil was being sprayed on runways. The sand or gravel passed through a spreader box on the back of the truck which followed the oil spray until the seal coat was complete. Sanders & Evans verbally contracted with the contractors to furnish the sand or gravel for runways in stock piles for $1.95 per ton. Later, they contracted verbally to deliver the gravel or sand from stock piles to spreader box on runways for 75¢ per ton. Sanders & Evans did the work through their own employees and equipment. The wages of the employees were paid by the contractors and charged against contract price. The employees were insured in Workmen's Compensation policy of the contractors but premiums were charged against Sanders & Evans. Sanders & Evans' compensation out of which they paid all above expenses consisted of $1.95 per ton for sand or gravel delivered in stock piles, and 75¢ per ton for delivery from stock piles to spreader.

On April 17, 1943, about 9:15 p. m. the superintendent of the contractors "instructed him (Evans) to remove his shovel as quick as he could as we wanted all the equipment off the field that evening ready for construction engineer's final inspection Saturday." Sanders & Evans at this time had removed all their equipment (except the shovel) to an-

other job they had at Gila Bend. It was while Evans was endeavoring to load the shovel on a truck to be taken away as "instructed" that the shovel fell on him inflicting injuries for which he asks compensation.

It is the contention of contractors that Sanders & Evans were independent contractors and not their employees. The contracts were oral and the evidence on that question was all oral. The Industrial Commission under the evidence construed the oral contract to mean that Sanders & Evans were employees and not independent contractors. While I doubt if the evidence properly considered and construed supports the Commission's finding in that regard, I feel certain the Commission was without power or authority under the law and facts to award compensation to Evans as it did.

Section 56–952, Arizona Code 1939 (Workmen's Compensation Law), fixes the rule for ascertaining compensation to be paid for injuries to employees growing out of and in the due course of their employment. Such section lays down rules by which to calculate the compensation for injuries to employees. If the employee has been working continuously for thirty days his "average monthly wage" during that period is the basis of his compensation. If the employee has not been continuously employed for thirty days immediately preceding his injury, his "average monthly wage" shall be such sum as having regard to his previous wage, or the wage of employees in the same or most similar employment in the same or neighboring locality as reasonably represents his monthly earning capacity. If the injured employee is working under a contract guaranteeing the amount per diem or per month the compensation is on the basis of a guaranteed wage, paid either on a per diem or monthly basis.

■■ Thus there are three classes of employees who are to have compensation under Section 56–952 for injuries sustained in their employment. In each case the rule for calculating the compensation is given, none of which has application to the facts here. Sanders & Evans were not employees of the Construction Company & Everly. Their agreement was to stock pile the sand or gravel for $1.95 per ton and to deliver the sand and gravel from stock pile to spreader box for 75¢ per ton, all at their own expense. Sanders & Evans were not working on a wage basis, either *per diem* or by the month or otherwise. They were to do certain work at a certain price. They might make wages or they might not. They might loose on their contract. Their compensation was for a finished job which might amount to a considerable sum or nothing. If they took the work for too little, the result would be a loss. Employees run no such risk. Their wage is fixed by contract or by law. The law fixes no other contract for Sanders & Evans than the one they, themselves, made.

■ Evans' contention that he was a shoveler and should receive the compensation of a shoveler is without any basis. In fact as the owner and employer he looked after keeping the shovel in repair, but never operated it. The evidence is that one Frank Payne was the shovel operator. Webster defines a shoveler as "A laborer who works with a shovel." It would be just as sound to call a person who moves a piano, a pianist, as to call a person who helps to move a steam shovel, a shoveler. There is an absolute lack of evidence that he ever operated a steam shovel. The evidence shows that he helped move it.

I seriously question the soundness of the Industrial Commission's conclusion that Evans, when he was hurt, was engaged in the completion of his contract.

The referee questioned Evans on that point, and his answers were as follows:

"Referee: . . . You say this was a gas shovel. A. Yes. sir.

"Q. You were loading it on the truck. A. Yes sir.

"Q. What were you loading it on the truck for. A. To take it off the airport.

"Q. Were you taking the shovel away from the airport. A. Yes sir.

"Q. Through with it. A. Yes sir."

At that very time Sanders & Evans had removed all of their equipment from the job except the shovel. They employed one Ernest Alivariez, a trucker of Casa Grande, to haul the shovel to Casa Grande, and when Evans was hurt he was trying to load the shovel on Alivariez's truck. Really and in fact Sanders & Evans did not return to the job or do any other act that would constitute them employees of the Construction Company and Everly at the time of injury.

We think under the law and the facts that the award should be vacated and set aside and it is so ordered.

DUDLEY W. WINDES, Superior Judge, concurs.

STANFORD, J. (Dissenting).—Since the opinion doubts the construction of the oral contract by the Industrial Commission that Sanders & Evans were employees and not independent contractors, I take the position that Sanders & Evans were not independent contractors, but were subcontractor employees under Sec. 56–928, Arizona Code 1939, which reads in part as follows:

" . . . Where an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractor and the persons em-

ployed by him, and his sub-contractor and the persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer. . . . ''

The petitioners, Capital Construction Company and Everly, as the evidence shows, entered into a contract with the United States Government for the construction of the work referred to, and the following are clauses from that contract:

'' . . . The contracting officer may require the contractor to dismiss from the work such employee as the contracting officer deems incompetent, careless, insubordinate, or otherwise objectionable. . . .

''The contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the specifications, regardless of any contractual relationship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics; . . . ''

From these items in the contract it can be seen that the Government did not intend that the work should be done by an independent contractor.

I concur in the other holdings of the opinion.

Note: Because of the illness of Chief Justice Mc-ALISTER, the Honorable DUDLEY W. WINDES, Judge of the Superior Court of Maricopa County, was called in to sit in his place and stead.